FILED
United States Court of Appeals
Tenth Circuit

June 7, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID WHITMORE,

        Petitioner-Appellant,

v.

DAVID PARKER, Warden,

        Defendant-Appellee.

No. 11-6317
(D.C. No. 5:11-CV-00539-R)
(W.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **HOLMES**, Circuit Judges.

David Whitmore is a prisoner in the custody of the State of Oklahoma. On August 12, 2010, a disciplinary hearing officer found him guilty of being present in an unauthorized area. After unsuccessfully challenging his disciplinary conviction in state court, he filed a federal petition for a writ of habeas corpus in the Western District of Oklahoma pursuant to 28 U.S.C. § 2241. The district court denied the petition on the

---

[*] This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this matter. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

merits.  It further denied various motions filed by Mr. Whitmore.  Mr. Whitmore, proceeding pro se,[1] now requests a certificate of appealability ("COA") to appeal from the district court's order.  We deny Mr. Whitmore's COA request and dismiss this matter.

## I

On August 12, 2010, a disciplinary hearing officer at the Lawton Correctional Facility in Lawton, Oklahoma, found Mr. Whitmore guilty of being present in an unauthorized area in violation of Oklahoma Department of Corrections ("ODOC") institutional policies, which resulted in a loss of earned prison credits.  *See* R. at 241 (Mag. J. Rep. & Rec., filed Oct. 24, 2011).  Mr. Whitmore filed a petition for judicial review in state district court challenging this decision.  This petition was denied, and he appealed to the Oklahoma Court of Criminal Appeals ("OCCA"), which affirmed the state district court's denial of relief.

On May 10, 2011, Mr. Whitmore filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  He presented three separate grounds for relief, alleging first that his due-process rights were violated because "there was no evidence of any rule violation." *See* R. at 6, 10–11 (Pet. for Writ of Habeas Corpus, filed May 10, 2011) (capitalization altered).  As to this allegation, Mr. Whitmore broadly alleged that there was no evidence that he committed the disciplinary violation for which he was found guilty—*viz.*, being

---

[1]     Because Mr. Whitmore is proceeding pro se, we construe his filings liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010).

present in an unauthorized area. The offense at issue (Violation Code 03-1) is defined in the ODOC policies, *see* Okla. Acts Constituting Rule Violation, *available at* http://www.doc.state.ok.us/offtech/060125aa.pdf [hereinafter "ODOC Rules"], and prohibits being present "[o]utside defined boundaries within [a] facility as defined by [the] facility or . . . in a restricted area." ODOC Rule 03-1.

The evidence at Mr. Whitmore's hearing showed that he was released from his assigned housing "unit" to attend a computer class, but instead of reporting to the class, he went to the disciplinary hearing office ("DHO"). Although Mr. Whitmore claimed that he had permission from a correctional officer, Officer Farnsworth, to go to the DHO—indeed, that Officer Farnsworth *directed* him to go there—the disciplinary hearing officer concluded that there was sufficient evidence that Mr. Whitmore was present in an unauthorized area. *See* R. at 119 (Disciplinary Hr'g Report, dated Aug. 17, 2010). In reaching this decision, the disciplinary hearing officer relied upon the statements of three correctional officers—Officers Benton, Kirkpatrick, and Farnsworth. The gist of these statements was that, contrary to Mr. Whitmore's claims, Officer Farnsworth authorized him to report to the computer class, not the DHO. The disciplinary hearing officer concluded that the "[s]taff ha[d] nothing to gain by fabricating this evid[ence]." *Id.* at 119. Upon referral, the magistrate judge recommended that the district court find this evidence sufficient to support Mr. Whitmore's disciplinary charge.

In his habeas application, Mr. Whitmore also argued that he was denied the right to present witness statements and documentary evidence at his disciplinary hearing, and that

the facility officers' "retaliatory" conduct injected bias into the disciplinary proceedings. The magistrate judge recommended that the district court also deny these claims because they were unsupported and largely contradicted by the record.

Moreover, the magistrate judge recommended denial of several of Mr. Whitmore's pending motions, including his (1) motion to stay the proceedings in order to submit, *inter alia*, an audio tape of the hearing; (2) motion to amend the stay motion in order to obtain additional discovery; and (3) motion to amend in order to proceed under a "hybrid" complaint whereby he could assert an additional "retaliation" claim under 42 U.S.C. § 1983.

Mr. Whitmore filed objections to the magistrate judge's report on each ground. However, the district court denied the objections, holding that there was sufficient evidence that Mr. Whitmore had committed a rules violation by being present in an unauthorized area. *See id.* at 269 (Dist. Ct. Order, filed Nov. 10, 2011). Moreover, it found, after "review[ing] the entire record," that Mr. Whitmore was given notice and an opportunity to present witnesses and other evidence at his disciplinary hearing. *Id.* It further denied all of Mr. Whitmore's pending motions. Mr. Whitmore now appeals.

**II**

Mr. Whitmore requests a COA to appeal from the district court's denial of his § 2241 petition and his attendant motions. Broadly, he raises the same general arguments that he did below, and claims that the district court misunderstood his contentions. Absent our grant of a COA, we lack jurisdiction under the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA") to review the merits of Mr. Whitmore's proposed appeal. *See* 28 U.S.C. § 2253(c)(1)(A); *accord Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). Specifically, "a COA is needed to appeal . . . 'the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court' . . . ." *Montez v. McKinna*, 208 F.3d 862, 866–67 (10th Cir. 2000) (quoting 28 U.S.C. § 2253(c)(1)).

We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the applicant must show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted). Where the district court denies an application on a procedural ground, ordinarily the applicant must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Harris v. Dinwiddie*, 642 F.3d 902, 906 (10th Cir. 2011) (quoting *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

We address each of Mr. Whitmore's asserted grounds of error. In the end, we find that Mr. Whitmore has failed to meet his burden to establish that reasonable jurists could debate the correctness of the district court's resolution of his petition.

## A

Mr. Whitmore first contends that the district court incorrectly dismissed his claims pursuant to the respondent's "motion to dismiss," in that the court inappropriately considered material outside of the pleadings in contravention of Federal Rule of Civil Procedure 12(d).  Aplt. Opening Br. at 5.  Specifically, Mr. Whitmore contends that the court should have converted the motion to dismiss to one for summary judgment, and credited his own evidence in the light most favorable to him.  *See id.*; *see Hicks v. Mitchell*, No. 0:09-2785-CMC-PJG, 2010 WL 2721276, at *1 n.2 (D.S.C. June 18, 2010) (converting a state respondent's motion to dismiss a § 2241 petition into a motion for summary judgment because the motion relied on external exhibits); *accord Higdon v. Jarvis*, No. 7:11–cv–00330, 2012 WL 738731, at *3 & n.6 (W.D. Va. Mar. 5, 2012).

We disagree with Mr. Whitmore's assertion of error.  First, in civil litigation, while the general rule is that "[a] motion to dismiss for failure to state a claim upon which relief can be granted must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings," *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998), Mr. Whitmore is wrong as a factual matter that a motion to dismiss was even filed in this case.  Rather, the respondent simply filed a "response" to Mr. Whitmore's habeas petition, arguing that his claims failed as a matter of law.

In any event, while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance—particularly where strict application

would undermine the habeas review process under AEDPA. *Cf.* Fed. R. Governing Section 2254 Cases in the U.S. Dist. Cts. 12 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, *may be applied* to a proceeding under these rules." (emphasis added));[2] *Kilgore v. Att'y Gen. of Colo.*, 519 F.3d 1084, 1088 (10th Cir. 2008) ("[H]abeas proceedings may be exempt in some circumstances from strict application of the Federal Rules of Civil Procedure."). For instance, discovery, to the extent that it is permitted, is generally more circumscribed in the habeas context. *See* Fed. R. Governing Section 2254 Cases in the U.S. Dist. Cts. 6; *cf. Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) ("There is no pre-motion discovery in a Section 2255 case, as there is in summary judgment proceedings in a civil case."). And the district court is plainly permitted to consider pertinent matters of record submitted by the respondent. *See, e.g.*, Fed. R. Governing Section 2254 Cases in the U.S. Dist. Cts. 5(c) (requiring a state respondent to "attach to the answer parts of the [state] transcript that the respondent considers relevant"); *see also Garza*, 596 F.3d at 1205 ("Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts states that a district court judge must either dismiss a petition if it 'plainly appears' from the petition *and any exhibits* that the petitioner is not entitled to relief or the district judge must order the respondent to file an answer, motion or other response." (emphasis added;

---

[2]    The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241. *See, e.g.*, *Boutwell v. Keating*, 399 F.3d 1203, 1211 n.2 (10th Cir. 2005) ("The District Court . . . acted within its discretion by applying the Section 2254 Rules to this § 2241 petition.").

other emphasis omitted)); 1 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 15.2[c][iii], at 906 (6th ed. 2011) ("Most petitioners do not have the ability to submit the record with the petition, and the statute and rules relieve them of any obligation to do so and require the state to furnish the record with the answer.").

In this vein, contrary to the customary practice in most civil litigation, it is well established that "[the] district court [may] dismiss summarily [a] petition on the merits when no claim for relief is stated." *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) (quoting *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983)) (internal quotation marks omitted); *see* Fed. R. Governing Section 2254 Cases in the U.S. Dist. Cts. 4; *Garza*, 596 F.3d at 1205 (noting that "the district court possesse[s] the discretion . . . to dismiss [a] § 2241 petition if it appear[s] that the petitioner [i]s not entitled to relief"); *cf. Ochoa v. Sirmons*, 485 F.3d 538, 545 (10th Cir. 2007) ("[U]nder Rule 4 of the Rules Governing § 2254 Cases the district courts . . . engage in a merits screening of all habeas petitions."); 1 Hertz & Liebman, *supra*, § 15.2[c][i], at 895 ("Summary dismissal under Habeas Rule 4 is a drastic disposition, not generally available in other civil litigation . . . ."). That is what occurred in this case, and Mr. Whitmore has not explained why the district court's failure to resolve the challenge to his petition under the rubric of summary judgment was improper.

Furthermore, even assuming, *arguendo*, that the district court erred by not formally converting Mr. Whitmore's motion, he has not shown that he was prejudiced because the

magistrate judge considered the entire record, including his attached materials. *Cf.*

*Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1214 (10th Cir. 2010) ("[W]e will still

affirm a grant of summary judgment [*sua sponte*] if the losing party suffered no prejudice

from the lack of notice."). The district court was not required to credit Mr. Whitmore's

personal view of the evidence. *See, e.g.*, *Parkhurst v. Lampert*, 339 F. App'x 855, 862

(10th Cir. 2009) (rejecting "a contention made in [a] summary judgment response brief,

which was . . . a conclusory, self-serving statement unsupported by any evidence"); *see*

*also Wilson v. Oklahoma*, 363 F. App'x 595, 613 (10th Cir. 2010); *cf. United States v.*

*Triplett*, 402 F. App'x 344, 347 (10th Cir. 2010) ("[The defendant] fails to point to any

evidence other than his self-serving statements to support his claim that his plea was

coerced."). Instead, even under a summary judgment standard, Mr. Whitmore was

entitled only to the "*reasonable* inferences" arising from the evidence. *Jones v. United*

*Parcel Serv., Inc.*, 674 F.3d 1187, 1195 (10th Cir. 2012) (emphasis added) (quoting *Baty*

*v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999)) (internal quotation

marks omitted). The district court found no support, in considering much of the

uncontradicted record, for Mr. Whitmore's assertions. For these reasons, we reject his

procedural contention.

**B**

On the merits, regarding his first substantive claim for relief, Mr. Whitmore argues

that reasonable jurists could debate the district court's adoption of the magistrate judge's

recommendation—specifically, that the claim be dismissed on the basis that there was

sufficient evidence to support his disciplinary charge.

We begin by emphasizing that "[i]t is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Howard v. U.S. Bureau Of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996)) (internal quotation marks omitted). However, the "full panoply of rights due a defendant in [criminal] proceedings does not apply" in prison disciplinary proceedings because they are not part of a defendant's criminal prosecution. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Rather, in such circumstances, the inmate must receive, at bottom:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Howard*, 487 F.3d at 812 (quoting *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985)) (internal quotation marks omitted) [the "*Wolff* factors"]. If the foregoing protections are afforded, the reviewing court must only be able to ascertain "some evidence" in the proceedings below in order to uphold the disciplinary action. *Id.* (quoting *Hill*, 472 U.S. at 454) (internal quotation marks omitted). We must remember that the "relevant inquiry is what process [Mr. Whitmore] received, not whether the [State] decided [his] case correctly." *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam).

Mr. Whitmore suggests that there was no evidence to support his write-up for being in an "unauthorized area." However, he first seems to claim that, *as a matter of law*, he could not have been guilty of a violation because he went to the DHO during what he terms an "[i]nmate movement," a time where there were no technical or physical boundary restrictions. Aplt. Opening Br. at 3. His contentions are belied by the record and the applicable rule at issue—*viz.*, ODOC Rule 03-1.

ODOC Rule 03-1 defines the instant offense as being "present in a *restricted area*,"[3] or being present "[o]utside defined boundaries . . . as defined by [the] facility." (Emphasis added.) Although there appear to be two distinct means of establishing a violation of this rule, its essence is clear: a prisoner may not venture into an area where he has no right to be consistent with his institutional commitment. Indeed, a panel of this court has assumed that an inmate's presence in an area outside of his assigned prison unit constitutes a violation of ODOC Rule 03-1. *See Mitchell v. Howard*, 419 F. App'x 810, 815 (10th Cir. 2011) ("[The inmate] was charged with being present in an unauthorized area, in violation of ODOC Rule 03–1. . . . [And it is] clear that [the inmate] was not authorized to be at the [place he was spotted]."); *cf. Bostic v. Carlson*, 884 F.2d 1267, 1271 (9th Cir. 1989) (holding in the alternative that there was sufficient evidence that the appellant was in an "unauthorized area" under applicable prison regulations, where the record showed that a prison staff member "observed [him] talking to another inmate in

---

[3]      A "restricted area" by definition is "an off limits area." *Webster's Third New International Dictionary* 1937 (1981).

-11-

the unauthorized area and . . . he made no attempt to enter his proper housing unit after [a] free-movement period ended"); *Davis v. Waters*, 59 F.3d 166, 1995 WL 371680, at *1–2 (4th Cir. June 20, 1995) (per curiam) (unpublished table decision) (holding that there was sufficient evidence that a prisoner was in an "unauthorized area" where he "left his assigned cell" without permission (quoting applicable correctional facility rules) (internal quotation marks omitted)).

In this case, the evidence showed that Mr. Whitmore was released from his assigned "unit" to attend a computer class, but instead of reporting to the class, went to the DHO without permission.   If true, such conduct would unquestionably constitute a violation of ODOC Rule 03-1.  That is, although Mr. Whitmore generally suggests that the DHO was not an off-limits area at the time he went there, *see* Aplt. Opening Br. at 7, he cannot reasonably disagree that if he had no permission to be there—even during an "inmate movement"—his presence would constitute a violation of the rule.  Tellingly, as the district court pointed out, Mr. Whitmore's "own statement . . . that he was told to come to the DHO's office by Correctional Officer Farnsworth . . . indicates that [he] knew he was not supposed to be at the DHO[] office unless directed."  R. at 268; *cf.* Aplt. Opening Br. at 7 ("The Court totally misses the fact that the Appellant said that he was told to go to DHO by an officer." (capitalization altered)).

We now turn to the core of his first, substantive argument.  Despite the fact that Mr. Whitmore claimed that he was directed to go to the DHO, the disciplinary hearing officer found evidence to the contrary and concluded that Whitmore was guilty of being

-12-

present in an unauthorized area. "The 'some evidence' standard is not exacting," *Mendoza v. Tamez*, 451 F. App'x 715, 717 (10th Cir. 2011); rather, the record must reveal only a "modicum of evidence" sufficient to support the disciplinary violation resulting in the loss of good time credits, *Hill*, 472 U.S. at 455.

Like the district court, we easily conclude that there was enough evidence in the record to satisfy the foregoing standard. Specifically, the statements given by three correctional officers demonstrated that Mr. Whitmore was authorized only to attend a computer class, and instead of going to the computer class, he went to the DHO without permission. *See* R. at 244 (relying on statements offered at the disciplinary hearing); *cf. Gamble v. Calbone*, 375 F.3d 1021, 1032 (10th Cir. 2004) (holding that "*no* evidence support[ed] a finding" that prisoners attempted to obtain money for an improper purpose because there was no suggestion that they acted with fraudulent intent, an element of the charge (emphasis added)), *superseded by statute on other grounds as stated in Magar v. Parker*, 490 F.3d 816, 818–19 (10th Cir. 2007). Consequently, we conclude that there was sufficient evidence that Mr. Whitmore was in an "unauthorized area" as defined by the ODOC Rules, and reasonable jurists could not debate the district court's conclusion that "some evidence" supports his conviction.

## C

Mr. Whitmore argues on appeal, as he did below, that he was not permitted the opportunity to present a witness statement at the disciplinary hearing. Further, he contends that he "requested video tape footage but was denied the right to view the

evidence." R. at 244. The magistrate judge rejected Mr. Whitmore's claim that he was

not permitted to present the witness statement at the disciplinary proceedings on the

ground that the record demonstrates that he was simply unable to secure the witness

statement that he desired—not prevented from presenting it. Moreover, the magistrate

judge found that the record further demonstrated that videotape footage was played

*during* the hearing and that it showed Mr. Whitmore in the unauthorized area.

As noted, in order for a disciplinary action resulting in the loss of good time credits

to accord with the requirements of due process, an inmate must be given "advance written

notice of the disciplinary charges" and "an opportunity . . . to call witnesses and present

documentary evidence in his defense." *Howard*, 487 F.3d at 812 (quoting *Hill*, 472 U.S.

at 454) (internal quotation marks omitted). We address each of Mr. Whitmore's

contentions in turn but, like the magistrate judge and the district court, conclude that the

constraints of due process were not unshackled in the adjudication of Mr. Whitmore's

disciplinary violation.

**1**

First, Mr. Whitmore claims that he was denied the ability to present evidence—

specifically, the statement of a witness—at the hearing. As a threshold matter, the record

demonstrates that Mr. Whitmore did not initially want to present any witness testimony,

but only wanted to bring *statements* made by witnesses. *See* R. at 106 (Investigator's

Rep., dated Aug. 11, 2010). And, at the time of the hearing, Mr. Whitmore did, in fact,

present one witness statement—the statement of a fellow inmate suggesting that Officer

Farnsworth told Mr. Whitmore to go to the DHO.

Nevertheless, Mr. Whitmore contends that, in effect, he was blindsided by the hearing and unconstitutionally prevented from offering the statement of "[an]other" witness when the hearing officer refused to postpone the hearing while *that* witness was in the restroom. Aplt. Opening Br. at 13. First, Mr. Whitmore does not identify this "other" witness, or the purported content of the witness's statement. But, in any event, we agree with the district court that "[t]he . . . Investigator's Report reveal[s] that [Mr. Whitmore] was informed of the charge and evidence against him, the date and time of the hearing, [and his] right to call witnesses at the hearing." R. at 269. In fact, the record indicates that Mr. Whitmore was given "approximately 24 hours [to prepare] after being notified of the charge." *Id.*

Upon review of the record, we conclude that Mr. Whitmore was given adequate advanced written notice of the disciplinary charges and an opportunity to present evidence.[4] *See Muhammad v. Wiley*, 330 F. App'x 165, 167 (10th Cir. 2009) (noting that

---

[4]     Mr. Whitmore argues that even though he was provided with notice and twenty-four hours to prepare, he was "still . . . denied" the right to present testimony in contravention of due-process requirements because the hearing officer could have simply waited until his "other" witness got out of the restroom to testify. Aplt. Opening Br. at 14. Because simply postponing the hearing in order for the witness to arrive would not be "unduly hazardous to institutional safety or correctional goals," Mr. Whitmore reasons, the hearing officer was not justified in refusing him the opportunity to present his witness. *Wolff*, 418 U.S. at 566. We reject this argument.

First, to the extent that this argument is predicated upon the notion that Mr. Whitmore was unable to present "live" testimony, as noted, the record indicates that Mr.
(continued...)

-15-

due process requires "written notice of the claimed violation delivered to the prisoner at least twenty-four hours before a disciplinary hearing"); *id.* at 168 (holding that inmate was afforded an adequate opportunity to present a defense where, *inter alia*, he was notified of the charges against him and the time of the hearing well in advance).

### 2

Mr. Whitmore contends that he was denied the opportunity to view a videotape

---

[4](...continued)
Whitmore said nothing about an intention to present that type of evidence at the hearing. Rather, it indicates his desire to offer written statements. *See* R. at 106 ("Offender states he will bring *statements* to hearing." (emphasis added)).

Second, and more importantly, the hearing officer was not obliged to postpone the hearing simply because Mr. Whitmore failed to prepare his "other" witness's statement in time. *See* R. at 122 (Offender Misconduct Appeal Form, dated Oct. 26, 2010) (noting that Mr. Whitmore confirmed "during the hearing" that he was "unable to get the statement from [his] witness" and finding that it is "[Mr. Whitmore's] responsibility to ensure" that his evidence was in order). Ordinarily, we will not impose procedural constraints on a prison's administration of a disciplinary proceeding absent a showing that the disciplining officials acted with a measure of arbitrariness, obstruction, or bad faith that infected the proceeding with unfairness. *See Wolff*, 418 U.S. at 566 ("The operation of a correctional institution is at best an extraordinarily difficult undertaking."); *see also Sandin v. Conner*, 515 U.S. 472, 482 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment."); *cf. Brown v. Braxton*, 373 F.3d 501, 507–08 (4th Cir. 2004) ("It makes sense to treat inmate witnesses differently from other types of witnesses . . . ."). Nothing of that sort has been demonstrated in this case.

Finally, "errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review." *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006). As noted in text, Mr. Whitmore fails to explain the substance of the "other" witness's statement. Consequently, we would be hard-pressed to conclude that Mr. Whitmore was prejudiced by the failure of the disciplinary hearing officer to delay the proceeding so that he could get a statement from that witness.

-16-

that he claims would exonerate him. The district court rejected this claim. Although adopting a different rationale, we agree with the district court's ultimate rejection of this claim.

In his habeas petition, Mr. Whitmore states that he requested the videotape partly because it would have shown that "[he] was not in a[n] unauthorized area." R. at 11. The magistrate judge concluded that the record demonstrates that Mr. Whitmore viewed this tape with the hearing officer and, in any event, he did not argue that the tape would exonerate him because he essentially admitted to being present in the DHO. Mr. Whitmore objected, claiming that the tape would exonerate him because it would *also* show that Officer Farnsworth instructed him to go to the DHO. The district court denied the objection, and concluded that Mr. Whitmore had waived the foregoing argument because he raised it for the first time in his objections to the magistrate judge's report and recommendation.

We respectfully disagree with the district court's procedural rejection of Mr. Whitmore's argument on waiver grounds, but ultimately conclude that he has failed to make a substantial showing of a denial of a constitutional right. Accordingly, Mr. Whitmore is still not entitled to a COA. Mr. Whitmore clearly averred in his original habeas petition that the video would show that the "[correctional officer] told [him] to go to [the] DHO." R. at 11. And, of course, even though Mr. Whitmore did not explicitly use the district court's language—*viz.*, that the tape would "exonerate" him—we must accord his briefing "a solicitous construction" in light of his pro se status. *Van Deelan v.*

*Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007). In that respect, we find it hard to conceive of any more "exonerating" evidence than a tape that allegedly shows Officer Farnsworth instructing Mr. Whitmore to go to the DHO, when the officer denied giving such an instruction.

Nonetheless, it is clear that Mr. Whitmore's claim is meritless and, therefore, he cannot even begin to make a substantial showing of the denial of a constitutional right on this ground. The record demonstrates that he was given the opportunity to "present relevant documentary evidence during the hearing," R. at 122, and that the videotape at issue was considered by the hearing officer, *see id.* at 245. Additionally, nowhere in the record does it appear that Mr. Whitmore sought to further review the contents of the tape in order to present additional evidence. We need not be bound by Mr. Whitmore's conclusory averments to the contrary. *See Tigert v. Higgins*, 290 F. App'x 93, 100 (10th Cir. 2008) (rejecting the petitioner's "bald averments to support his claim that he made any kind of request for review of evidence related to [an] alleged clerical error" where the record refuted that position). Thus, we reject his due-process claim predicated upon the allegation that certain videotape evidence was not considered during the disciplinary hearing. In other words, he has failed to make a substantial showing of the denial of a constitutional right.

**D**

Mr. Whitmore also argues that he was denied an impartial decisionmaker because the hearing officer was biased, as demonstrated by other officers' "retaliatory" conduct.

The magistrate judge rejected this argument, finding that Mr. Whitmore had failed to "identify any specific acts of retaliation," R. at 246, or "allege facts sufficient to demonstrate [that] the risk of unfairness was intolerably high or the existence of actual bias,"[5] *id.* at 247.

Mr. Whitmore challenges the district court's finding that he failed to offer sufficient evidence demonstrating the partiality of the hearing decisionmaker. He claims that the decisionmaker could not have been impartial because he "deni[ed] . . . [Mr. Whitmore's] right to call [his] witness." Aplt. Opening Br. at 18. Additionally, Mr. Whitmore claims that bias seeped into the proceeding because Officer Kirkpatrick, who offered a statement regarding the incident at issue, was angry with him based upon a prior disciplinary matter, *see id.* at 19, and because the hearing officer in the instant case had presided over a prior disciplinary proceeding involving Mr. Whitmore and was a colleague of the officers who submitted affidavits in support of the instant charge, *see id.* at 19–20. We cannot agree with Mr. Whitmore.

First, we have already found a lack of merit in Mr. Whitmore's claims that he was denied the opportunity to present witness statements. *See* Section II.C.1, *supra*. The same allegations do not constitute competent evidence of bias. The record is clear that

---

[5]     Although Mr. Whitmore styles this claim as a claim for "retaliation," we construe it as an allegation that his due-process rights were violated due to a high degree of alleged bias that permeated his disciplinary hearing. *See* Aplt. Opening Br. at 18 ("[T]he District Court erred in its recitation or understanding of the fact about the impartiality of decisionmaker." (capitalization altered)).

Mr. Whitmore's allegations and statements were considered, but the hearing officer simply found more credible the statements of the correctional officers. *See Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009) (rejecting an inmate's allegations that the hearing officer demonstrated partiality or bias by restricting the scope of the inmate's questioning of the charging officer); *cf. Jordan v. Wiley*, 411 F. App'x 201, 210 (10th Cir. 2011) (suggesting that bias may be found where the hearing officer assigns "categorical[] credib[ility]" to the statements of prison officials).

Mr. Whitmore's other averments of bias are equally baseless. Generally, "in order to comport with due process, . . . the decisionmaker must be impartial." *Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004). "[H]onesty and integrity are presumed on the part of a tribunal, [and] there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Id.* at 1220 (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998)) (internal quotation marks omitted).

Here, as the magistrate judge noted, Mr. Whitmore's attempt to tie the alleged bias of Officer Kirkpatrick to this case is unavailing. In the first place, he fails to clearly set forth the relevant facts from the prior incident from which he alleges the bias arose. As best we can tell from carefully and liberally reviewing his brief, Mr. Whitmore's basic contention is that the bias arose from a previous incident where Officer Kirkpatrick submitted a misconduct charge against him that was ultimately reversed on appeal, and, during the disciplinary hearing relating to *that* charge, she "butt[ed ]in" and contradicted

-20-

Mr. Whitmore's assertion that he had not received notice of the hearing. Aplt. Opening Br. at 19. Moreover, as discussed, Mr. Whitmore alleges that the disciplinary hearing officer presided over a prior misconduct charge involving Mr. Whitmore and was a colleague of the officers who submitted affidavits in support of the instant charge.

These facts do not show actual bias in the proceeding under review. Even if Officer Kirkpatrick harbored some ill will against Mr. Whitmore based upon their interaction in connection with the prior misconduct charge, that fact hardly indicates that the *disciplinary hearing officer* harbored any bias against Mr. Whitmore in his resolution of the disciplinary charge at issue here.[6] Indeed, Mr. Whitmore's finding of guilt was supported by the statements of other correctional officers not shown to be directly involved in the prior misconduct charge. Moreover, "[t]he fact that [staff] members had previously adjudicated cases against [the inmate], or had been the subject of his [prior] complaints, does not [without more] constitute proof of bias." *Wilson-El v. Finnan*, 263 F. App'x 503, 505 (7th Cir. 2008); *see Piggie v. Cotton*, 342 F.3d 660, 667 (7th Cir. 2003) (noting that to adopt "a rule automatically disqualifying any [prison officer] from adjudicating a prisoner's habitual case because he or she was a witness to events underlying one of the prisoner's prior convictions would be infeasible"); *cf. Gwinn*, 354

---

[6] Mr. Whitmore notes in passing that an (unspecified) "[a]uthor/[r]eporting officer" regarding the misconduct charge at issue here was the "boyfriend" and "possibly husband by now" of Officer Kirkpatrick. Aplt. Opening Br. at 19. However, Mr. Whitmore does not explain what relevance, if any, this fact has to his bias argument. Therefore, we do not pursue the matter further.

F.3d at 1220 (finding evidence of bias where a member of the hearing panel adjudicating the claim under consideration was named as a defendant in a concurrent federal action *on the same subject matter*).

And the fact that the reporting officers and the adjudicating officer were, generally speaking, professional colleagues does not demonstrate that the adjudicating officer had a direct connection to or interest in the incident at issue, or that this officer was predisposed towards reaching a result adverse to Mr. Whitmore. *See Allen v. Parke*, 114 F. App'x 747, 752 (7th Cir. 2004) ("Merely working, or even being friends with the victim is mere tangential involvement, which does not require disqualification of the decision-maker[;] otherwise an outside hearing body would need to be brought in every time an inmate was charged with a crime against a prison official." (citation omitted)). Consequently, this ground is without merit, and reasonable jurists could not disagree with the district court's resolution of it.

## E

Mr. Whitmore filed various motions supplementing his habeas petition. He filed (1) a motion seeking a stay of the proceedings and an order requiring the State to produce audiotapes and other evidence allegedly corroborating his claims; (2) a motion seeking to amend his request for a stay; and (3) a motion seeking permission to file a "hybrid" petition, adding a retaliation claim under 42 U.S.C. § 1983. The magistrate judge recommended that the motions be denied and the district court accepted the recommendation.

Mr. Whitmore's motions seeking a stay and to amend his stay motion primarily sought additional discovery to support his due-process claims. *See* Aplt. Opening Br. at 22 ("The District Court failed to consider the reasons behind Appellant's motion to stay proceedings, and motion to amend his motion to stay."). The magistrate judge found that he record was sufficient for disposition of Mr. Whitmore's claims and the district court agreed. Having thoroughly considered the record in assessing whether to grant a COA regarding Mr. Whitmore's habeas claims, we are hard-pressed to discern any error in the district court's decision to deny these discovery-related motions. *See Han Tak Lee v. Glunt*, 667 F.3d 397, 404 (3d Cir. 2012) (suggesting that discovery in habeas cases should be ordered where the requested evidence is "essential for the habeas petitioner to develop fully his underlying claim" (quoting *Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011)) (internal quotation marks omitted)); *accord Stevens v. McBride*, 489 F.3d 883, 899 (7th Cir. 2007). And Mr. Whitmore has not demonstrated the need for the additional material that he requests.

Finally, Mr. Whitmore sought permission to file "claims of retaliation and conspiracy pursuant to [42 U.S.C.] § 1983" based upon some of the same conduct that constituted the basis of his habeas petition. R. at 249; *see* Dist. Ct. Doc. No. 22, at 1–2 (Mot. for Am. Hybrid Civil Rights Compl., filed Sep. 20, 2011) ("[Petitioner] suddenly remembered about a case he read, and fortunately he jotted some notes down that talked/explained about the 'hybrid' [as a vehicle for a retaliation complaint]."). The magistrate judge recommended that the district court deny this motion because this circuit

"has long recognized the distinct purposes of habeas actions brought pursuant to 28 U.S.C. § 2241 and civil rights actions brought pursuant to 42 U.S.C. § 1983." R. at 249. More specifically, the magistrate judge noted that § 2241 actions contain different procedural requirements than § 1983 actions, and thus claims based upon the two are not cognizable in the same proceeding. After considering Mr. Whitmore's objection to this recommendation, the district court overruled it and denied the motion.

To the extent that Mr. Whitmore was seeking damages relief *through* his habeas petition, the district court plainly did not err in refusing him that option. By definition, habeas corpus in the instant context is limited to challenges to "the execution of a sentence," *Licon v. Ledezma*, 638 F.3d 1303, 1311 (10th Cir. 2011) (quoting *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996)) (internal quotation marks omitted); it is not meant to provide compensation for the "circumstances of confinement," *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam).

Furthermore, it is true that civil actions under § 1983 and habeas actions have different procedural requirements. *See, e.g.*, 1 Hertz & Liebman, *supra*, § 7.1[b], at 373 n.49 (noting that "[t]here are important procedural differences between habeas corpus and section 1983 actions"). However, we have previously permitted prisoners to lodge *both* § 2241 claims and § 1983 claims in the same filing. *See, e.g.*, *Ellibee v. Feleciano*, 374 F. App'x 789, 790 (10th Cir. 2010); *cf. Richards v. Bellmon*, 941 F.2d 1015, 1019 n.3 (10th Cir. 1991) (noting that "[a] single complaint may seek relief partly under § 2254 and partly under § 1983"); *Wiggins v. N.M. State Supreme Court Clerk*, 664 F.2d 812, 816

(10th Cir. 1981) ("[T]he Supreme Court [has] held that although a [§] 1983 claim of constitutional deprivation could be litigated simultaneously with a federal habeas corpus action, joinder of the actions is not required."); *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (per curiam) (considering a claim for damages under § 1983 *after* the district court recharacterized a prisoner's complaint entirely as a habeas petition, because the district court should have permitted the prisoner to maintain his damages claims, and convert only those claims under § 1983 that constituted challenges to "the length of . . . custody and . . . [requested] immediate or speedy release").  If an inmate complies with the applicable procedural requirements (including those in the Prison Litigation Reform Act) in asserting a claim under § 1983, ordinarily he may assert such a claim in the same filing with his habeas claims.

However, even assuming, *arguendo*, that Mr. Whitmore was actually seeking to assert a separate § 1983 retaliation claim as an amendment to his filing consisting of his habeas claim, and the district court misconstrued the nature of his amendment request, Mr. Whitmore is not entitled to any relief from us in the context of this COA proceeding. We are mindful that, in the COA sphere, our focus is on the district court's resolution of Mr. Whitmore's habeas petition.  Irrespective of any procedural error that the district court may have made concerning Mr. Whitmore's proposed § 1983 claim, Mr. Whitmore still would have to link any such error to an alleged denial of a constitutional right that is cognizable in habeas and alleged in his petition, and also make a substantial showing of the denial of that right.  This he has not done.  Indeed, Mr. Whitmore has not even

-25-

endeavored to demonstrate that the district court's denial of his motion to add a § 1983 retaliation claim was material to the district court's resolution of the merits of his habeas petition. In sum, Mr. Whitmore has utterly failed to make the requisite showing for the grant of a COA based upon the district court's action on this amendment motion.[7]

## III

For the foregoing reasons, we **DENY** Mr. Whitmore a COA and **DISMISS** this matter.

Entered for the Court

JEROME A. HOLMES
Circuit Judge

---

[7] In fact, it is unlikely that Mr. Whitmore could establish that he actually was harmed with respect to pursuing a civil rights retaliation claim under § 1983. The district court did not purport to evaluate the merits of any such claim, much less adjudicate and dismiss the claim with prejudice. By its terms, the court's judgment relates only to Mr. Whitmore's habeas petition. Thus, that judgment itself does not prevent Mr. Whitmore from commencing a separate § 1983 action based upon alleged retaliation. However, we do not opine on whether other possible procedural impediments—such as the applicable statute of limitations—might affect Mr. Whitmore's ability to bring such an action. Because we are not permitted to act as Mr. Whitmore's advocate, *see, e.g.*, *Jordan v. Sosa*, 654 F.3d 1012, 1018 n.8 (10th Cir. 2011), we leave this matter for his consideration and investigation.